UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL CORTEZ, an individual, on behalf of himself and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PARKER-HANNIFIN CORPORATION; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:20-cv-06430-AB-KK<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |

Plaintiff Miguel Cortez ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of Los Angeles on June 4, 2020. ("Compl.", Dkt. No. 1-2). The Complaint alleges that Defendant Parker-Hannifin Corporation ("Parker-Hannifin") and DOES 1 through 100, (collectively with Parker-Hannifin, the "Defendants") violated various California labor laws. *Id.* On July 20, 2020, Defendant removed the case to this Court, asserting this Court has jurisdiction under the Class Action Fairness Act ("CAFA"). *See* Notice of Removal ("NOR," Dkt. No. 1). Defendants then filed an Answer to the Complaint on July 27, 2020. (Dkt. No. 11). On August 18, 2020, Plaintiff filed a Motion to Remand. ("Motion," Dkt. No. 14). Defendants opposed the Motion, ("Opp.") and Plaintiff filed a reply, ("Reply").

1.

(Dkt. Nos. 16, 17). For the following reasons, the Court **DENIES** Plaintiff's Motion and **VACATES** the hearing set for October 9, 2020.

### I. BACKGROUND

Defendant is an Ohio corporation with employees engaged throughout California, including the County of Los Angeles. (Compl., ¶ 6). Defendants employed Plaintiff and other persons as hourly-paid or non-exempt employees in California. (Compl., ¶ 17). Plaintiff alleges that Defendant engaged in a scheme of wage abuse against Plaintiff and other class members, which included, among other things, Defendant's failure to pay Plaintiff and other class members for all hours worked, missed meal periods, missed rest breaks, and reimbursable business expenses. (Compl. ¶¶ 24-41). Plaintiff also alleges that Defendants failed to provide complete or accurate wage statements and failed to keep complete or accurate payroll records.

Based on these allegations, Plaintiff asserts eight causes of action: (1) Violation of Labor Code Sections 510 and 1198 (Unpaid Overtime); (2) Violation of Labor Code Sections 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of Labor Code Sections 226.7 (Unpaid Rest Period Premiums); (4) Violation of California Labor Code Sections 1194 and 1197 (Unpaid Minimum Wages); (5) Violation of California Labor Code Sections 201 and 202 (Final Wages Not Timely Paid); (6) Violation of California Labor Code Section 226(a) (Non-Compliant Wage Statements); (7) Violation of California Labor Code Sections 2800 and 2802 (Unreimbursed Business Expenses); and (8) Violation of California Business & Professions Code Sections 17200, et seq. (Unfair Competition/Unlawful Business Practices). (Compl., ¶¶ 43-101).

Plaintiff brings these claims on behalf of a putative class. (Compl., ¶ 1). The Complaint defines the putative class as "[a]ll current and former California-based (*i.e.*, currently 'residing' in California with the intent to remain in California indefinitely) hourly-paid or non-exempt employees of Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to

final judgment." (Compl., ¶13).

## II. LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal district court when the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). "A suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987). "The burden of establishing federal subject matter jurisdiction falls on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009). "Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal," statutes conferring jurisdiction are "strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citations and quotations omitted).

Pursuant to the Class Action Fairness Act ("CAFA"), federal district courts have original jurisdiction over certain class actions. 28 U.S.C. § 1332(d)(2). In order to remove a case under CAFA, the defendant must establish that (1) the parties are minimally diverse, (2) the proposed class has more than 100 members, and (3) the total amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007).

## III. DISCUSSION

Plaintiff argues that this action should be remanded to Los Angeles County Superior Court because Defendants have not carried their burden of proving the requisite amount in controversy of $5 million by a preponderance of the evidence. The parties do not dispute that minimal diversity exists between them and that the class contains over 100 members.[1] Thus, the Court must only determine whether

---

[1] The class size requirement is met because, while the Complaint does not identify a specific number of class members, it states that the class greater than fifty (50) individuals. (Compl. ¶ 15(a)). Further, Defendants' records indicate that there are

Defendants have satisfied the amount in controversy requirement of $5 million for CAFA jurisdiction to vest in federal court. For the following reasons, the Court finds that Defendant's showing is sufficient to satisfy CAFA's amount in controversy requirement.

In determining the amount in controversy, courts first look to the allegations in the complaint. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Courts can accept a plaintiff's good faith allegation of the amount in controversy. *Id.* When damages are unstated in a plaintiff's complaint, however, "the defendant seeking removal has the burden of establishing that the aggregate amount in controversy from the plaintiff's claims exceeds $5,000,000. *Id.*

If a plaintiff challenges the removing defendant's allegations as to the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). The evidence may "include affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). Notably, a defendant's opposition to a motion to remand need not present extensive or precise evidence. *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *2 (C.D. Cal. Mar. 20, 2020). Rather, a defendant may rely on "reasonable assumptions" to assert that the claims meet the amount in controversy requirement. *Arias v. Residence Inn by Marriot*, 936 F.3d 920, 922 (9th Cir. 2019). An assumption may be reasonable if it is founded on the allegations of the complaint. *Id.* at 925.

---

over 500 total prospective class members within the timeframe specified in the Complaint. (NOR ¶ 9). The diversity requirement is also met because Parker-Hannifin is an Ohio corporation with its principal place of business in Ohio, and the prospective class will contain only California citizens. (NOR ¶ 13, 15, 16; *see also* Compl. ¶ 13).

4.

Here, the Plaintiff does not allege a specific amount in controversy in the Complaint. According to Defendants, Plaintiff's allegations place $8,829,229.24 in controversy. Defendants break down their calculation as follows:

| Claim | Calculations | Amount in Controversy |
|---|---|---|
| Unpaid Overtime | 1 hour of unpaid overtime in half of workweeks: $44.24 avg. overtime rate x 1 hour x 63,851 total workweeks x 50% | $1,415,576.67 |
| Meal Breaks | Average of 1 meal period violation per workweek: $29.56 avg. hourly rate x 63,851 workweeks | $1,887,435.56 |
| Rest Breaks | Average of 1 rest period violation per workweek: $29.56 avg. hourly rate x 63,851 workweeks | $1,887,435.56 |
| Unpaid Minimum Wage | 1 hour of unpaid minimum in half of workweeks: $10 minimum wage x 63,851 workweeks x 50% | $638,510.00 |
| Waiting Time Penalty | 30 days of waiting time penalties for 75% of terminated class members: 174 terminated class members x $29.56 average hourly rate x 8 hours per day x 30 days | $1,234,425.60 |
| Attorneys' Fees | 25% x $7,063,383.29 subtotal | $1,765,845.85 |
| Total | | $8,829,229.24 |

The Court first looks to the allegations in the Complaint. With respect to unpaid overtime, Plaintiff's Complaint alleges that "[a]s a pattern and practice . . . Defendants failed to pay overtime wages to Plaintiff and other class members for all hours worked" and that "Plaintiff and other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation. (Compl., ¶ 35). Further, Plaintiff alleges that "[a]s a pattern and practice. . . Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiff and other class members (but not all)." (Compl., ¶ 49).

With respect to break periods, Plaintiff's Complaint alleges that "as a pattern

5.

and practice" Defendants "intentionally and willfully required Plaintiff and other class members (but not all) to work" during their meal and rest periods. (Compl., ¶¶ 61, 70). Plaintiff alleges that "as a pattern and practice" Defendants did not pay meal or rest period penalties. (Compl., ¶¶ 61, 62, 71.)

Finally, with respect to waiting time penalties, Plaintiff alleges, "[a]s a pattern and practice . . . Defendants failed to pay Plaintiff and other class members the wages owed to them upon discharge or resignation. (Compl.. ¶ 38.) Plaintiff further alleges, "Plaintiff and other class members are entitled to recover from Defendants . . . up to the thirty (30) day maximum" in statutory penalties. (Compl., because the $5 million jurisdictional amount has been established 84.) Plaintiff alleges that these violations happened to "Plaintiff and other class members (but not all)." (Compl., ¶ 81).

Plaintiff does not offer any specific facts or allegations about the frequency of these violations other than noting Defendant's "pattern and practice" of violative behavior. Based on these broad allegations and Plaintiff's "but not all" modification, Defendants assume violation rates of one unpaid hour of overtime per week for 50% of the total workweeks; one meal or rest period violation per week for all workweeks (a 20% violation rate); and a 75% violation rate for waiting time penalties. Then, Defendants offer two declarations of Vishal Tandon, the Director of HRIS Strategy and Analytics for Parker-Hannifin. ("Tandon Decl.", Dkt. 1 and "Suppl. Tandon Decl.," Dkt. 16-2). Tandon's review of the employment records reveal the following facts: (1) Parker-Hannifin employed 545 non-exempt employees in California during the relevant time period; (2) these employees worked approximately 63,851 workweeks; (3) the average hourly rate of these employees was $29.56; and (3) 86.6% of the putative class works full time, meaning they worked at least 40-hours per workweek. (Tandon Decl. ¶ 4; Suppl. Tandon Decl. ¶ 4.). Using the assumed violation rates and the evidence proffered by Vandon, Defendants calculated the amounts in controversy set forth in the table below.

6.

In Plaintiff's Motion, Plaintiff argues that these violation rates are not based on reasonable assumptions because Defendants do not provide evidence supporting such rates, and further argues that relying on Plaintiff's "pattern and practice" language in the Complaint is not enough to meet Defendants' burden. The Court disagrees.

### A. Whether Defendants' Assumed Violation Rates are Based on Reasonable Assumptions.

The amount in controversy considers the amount in dispute, not the amount a plaintiff is likely to recover. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[T]he amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 926 (quoting *Lewis*, 627 F.3d at 401). Thus, in determining the maximum recovery the plaintiff could reasonably recover, the defendant is not "required to comb through its records to identify and calculate the exact frequency of violations." *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015), nor "prove it actually violated the law at the assumed rate," *Arias*, 936 F.3d at 926. *See also Gant v. Aldi*, 2020 WL 1329909, at *2 (C.D. Cal, March 20, 2020) (finding that a defendant may proffer evidence that establishes the number of employees who meet the class description, their average rate of pay, and the number of qualifying workweeks and that defendant may then estimate the amount in controversy by making reasonable assumptions about potential violation rates based on the allegations in the complaint). As stated, an assumption may be reasonable if it is founded on the allegations of the complaint. *Arias*, 775 F.3d at 925.

Here, Defendants proffered evidence from Parker-Hannifin's HSIR Director and, based on Plaintiff's broad allegations that violations occurred as a matter of "pattern and practice" and the specific allegations involving Defendants' various schemes to underpay its employees, (*see generally* Compl.), Defendants assumed the above violation rates—which appear to be reasonable to this Court.[2] As stated, so

---

[2] This district has considered similar violation rates to be reasonable with substantially

long as the violation rates are based on the allegations of the Complaint, Defendants need not "comb through its records" or provide timecards and schedules to prove it violated the law at the proffered rate. While the Court agrees with Plaintiff that "pattern and practice" does not necessarily mean the exact violation rates Defendants set forth, such words do suggest continuous and universal violations. Plaintiff offers nothing concrete in the Complaint nor Plaintiff's Motion to suggest Defendants' violations occurred any less frequently than these reasonable rates. (*See generally* Compl.; Motion). Thus, the Court finds that Defendants properly used a chain of reasoning based on the Complaint to come up with the violation rates set forth in the Notice of Removal.³

### B. Plaintiff's Lack of Evidence.

The Court further considers that Plaintiff fails to rebut Defendants' evidence. Defendants contend that Plaintiff must submit evidence in support of its Motion. (Opp, at p. 5). Whether Plaintiff *must* submit evidence appears to be an open question in the Ninth Circuit, but in *Dart*, the Supreme Court does note, "when a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and

---

similar complaints and evidence. *See, e.g., Gant*, 2020 1320090, at *2; *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *1 (C.D. Cal. Oct. 1, 2019); *Torrez*, 2017 WL 2713400, at *1 (C.D. Cal. June 22, 2017); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *1 (C.D. Cal. May 5, 2016).

³ Moreover, with indeterminate phrases like "pattern and practice," Defendants could have calculated the amount in controversy based on a 100% violation rate. However here, Defendants elected to assume more conservative violation rates, including only considering 50% of the workweeks in the unpaid overtime calculation. *See, e.g., Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (noting that courts have assumed 100% violation rates in other cases involving sweeping allegations); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendant could properly calculate the amount in controversy based on a 100% violation rate").

the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." 574 U.S. at 88.  Plaintiff argues that Defendants are better positioned to determine the amount of controversy specifically, because they have access to and control over the records and information necessary to make such a calculation.  (Motion, at p. 9).  This argument is unavailing here, however, where Plaintiff could indicate the frequency and extent of the violations he purports to have suffered.  *Torrez v. Freedom Mortgage, Corp.*, 207 WL2713400, at *5 (C.D. Cal June 22, 2017); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("Notably, Plaintiff fails to assert any different rate of violation or to submit any evidence indicating a contrary rate of violation. Plaintiff does not even submit his own declaration stating that he experienced less frequent rates of violation than those asserted by Defendants.").

      Although the Court agrees that Plaintiff is not required to submit evidence to succeed on its Motion, the absence of such evidence in light of the indeterminate allegations in the Complaint—which can reasonably be interpreted to imply nearly 100% violation rates—bolsters this Court's finding that Defendants' assumptions of a limited but uniform rate based on those allegations are reasonable.  Thus, Defendant's estimated amount in controversy for the overtime, meal and rest break, and waiting time penalty claims suggests an amount of controversy of nearly $6.5 million *before* considering Plaintiff's minimum wage or attorney's fees claims.  Accordingly, because CAFA's $5 million jurisdictional amount has been established, it is unnecessary to consider the value of Plaintiff's other claims.

      For these reasons, and given the absence of competing evidence, Defendants have shown by a preponderance of the evidence that the $5 million amount in controversy requirement is met.

//

//

9.

## C. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand and retains jurisdiction over this matter.

**IT IS SO ORDERED.**

Dated: October 06, 2020

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE